UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

In re:

DAVID KEITH NIEBOER,                          Case No. DK 08-08751
                                              Chapter 7
              Debtor.                         Hon. Scott W. Dales
_____/

OPINION AND ORDER REGARDING DEBTOR'S OBJECTION TO
TRUSTEE'S FINAL REPORT AND APPLICATIONS FOR COMPENSATION

            PRESENT:    HONORABLE SCOTT W. DALES
                        United States Bankruptcy Judge

## I.    SUMMARY OF THE FACTS

On October 2, 2008, David Nieboer (the "Debtor") filed a petition for relief under Chapter 7 of the United States Bankruptcy Code. On Schedule B the Debtor listed a check (the "Check") from Cincinnati Insurance Company (the "Insurance Company") in an unknown amount,[1] representing insurance proceeds for damages to real property located at 2456 56th Street in Fennville, Michigan (the "Property"). The Insurance Company originally made the Check payable jointly to the Debtor and to his two mortgage holders, HSBC - Mortgage Services ("HSBC") and Countrywide Home Loans, Inc. ("Countrywide"). On Schedule C, the Debtor claimed $3,879.00 from the Check as exempt pursuant to 11 U.S.C. § 522(d)(5).

Because Countrywide and HSBC had properly perfected liens against the Property, and because this secured debt exceeded the amount of the Check, the Trustee assumed the secured creditors would be entitled to the entire Check, so she initially declined to administer it. On

---

[1] In fact, the amount of the Check was $76,792.00.

February 18, 2009, the court granted the Debtor a discharge. The Trustee filed a "No Asset Report," and the Clerk closed the case on March 31, 2009.

Unbeknownst to the Trustee, neither the Debtor nor HSBC nor Countrywide ever negotiated the Check.[2]  After the case was closed, the Debtor contacted the Insurance Company and requested that the company reissue the Check naming him as the only payee.  *See* Transcript of Hearing Held September 15, 2010 (hereinafter "Tr.") at p. 8.  Because the Insurance Company was aware of the bankruptcy case, it contacted the Trustee, and eventually reissued the Check to her.  By order dated July 1, 2009, the court granted the Trustee's unopposed motion to reopen the case to administer the Check and its proceeds.  Significantly, the Debtor did not object to the re-opening of the case or to the Trustee's request under Rule 9024 for relief from any "deemed abandonment" that might have occurred under 11 U.S.C. § 554(c).

Thereafter, the Trustee negotiated the Check (as reissued). When the Trustee filed her Final Report (DN 50) proposing to distribute the Check's proceeds mostly to the Debtor's creditors, the Debtor filed his objection ("Objection," DN 55).  In his Objection, he claims he is entitled to a significant portion of the Check beyond the amount he claimed as exempt.  Part of the Check he claims as payment for post-petition wages that he says he earned by restoring the Property pursuant to an agreement with the Insurance Company; the rest of the Check he claims because he expects to earn it by completing the restoration.  The court held a hearing in Kalamazoo, Michigan on September 15, 2010.

During the hearing, the court asked the Debtor if he regarded an evidentiary hearing as necessary in order to resolve his Objection. The Debtor declined the court's invitation for evidentiary hearing, and asked the court to make its decision based solely on the facts in the

---

[2] Although the record is not clear on this point, the Trustee posited that the secured creditors did not claim the Check as collateral because they may have believed the foreclosure with respect to the Property extinguished their claim to the insurance proceeds.  *See Smith v. General Mortgage Corporation*, 261 N.W. 2d 710 (Mich. 1978).

record. *See* Tr. p.18: 21-25 *and* p. 19: 1-19.  The record includes, *inter alia*, an affidavit from the Insurance Company adjuster who is familiar with the Check and the Debtor's insurance claim. *See* Affidavit of David E. Brownell, dated August 30, 2010 ("Brownell Aff.," DN 61).

## II.    DEBTOR'S ARGUMENT

The Debtor agrees that a certain portion of the Check is property of the estate, but as noted above, he claims a portion of the Check as his own and asks the court to make three deductions for his benefit.

First, the Debtor claims he is entitled to an exemption of $3,731.00.[3]  The Trustee agrees.

Second, the Debtor claims that as part of a contract with the Insurance Company, he began making repairs on the Property. He estimates that approximately $38,000.00 of the Check could be attributed to his pre-petition earnings, which he concedes would be included within the property of the estate to be distributed to his creditors.  The Debtor, however, also claims that he earned approximately $27,000.00, post-petition, restoring the Property, mostly between his bankruptcy filing and the Trustee's Motion to Reopen.  The Debtor argues that because this work was completed post-petition, the proceeds of the Check allocable to this post-petition labor is not property of the estate.

Third, the Debtor claims there is approximately $10,700.00 in repair work yet to be completed on the Property. Because the Debtor says he contracted with the Insurance Company to make all of the repairs, he would like to continue working in order to earn the remaining $10,700.00.  If allowed to do so, he argues this portion of the Check would be post-petition wages and not property of the estate.

---

[3] The court assumes the change in the exemption amount from the amount on the Debtor's schedule occurred when the Debtor discovered the exact dollar amount of the Check.

Having carefully reviewed the record, including the Affidavit of David E. Brownell, the court rejects the Debtor's characterization of any portion of the Check as post-petition wages.

### III.    ANALYSIS

Generally, money that a debtor earns pre-petition is included within the "property of the estate" if the debtor completed all steps necessary to earn the money before the petition date -- even if the debtor receives payment post-petition. *See* 11 U.S.C. § 541(a)(1); *Wicheff v. Baumgart*, 215 B.R. 839 (6th Cir. BAP 1998) (insurance commissions were property of the estate because all actions required to earn the commissions were completed pre-petition); *Tully v. Taxel (In re Tully)*, 202 B.R. 481 (9th Cir. BAP 1996) (real estate commissions received post-petition by a debtor were property of the estate where "all acts of the debtor necessary to earn [them] are rooted in the pre-bankruptcy past"); *Towers v. Wu (In re Wu)*, 173 B.R. 411 (9th Cir. BAP 1994) (post-petition insurance and annuity renewal commissions for policies sold pre-petition are property of the estate to the extent commissions were attributable to pre-petition services).

In this case, the Debtor had a right to the Check (as joint payee) prior to filing bankruptcy. *See* Brownell Aff. at ¶¶ 4 & 7 (Insurance Company initially tendered payment in December, 2007 for a loss that occurred September 7, 2006); Voluntary Petition dated October 2, 2008 (DN 1). When the Insurance Company issued the Check, it was paying the Debtor on account of his claim for damages to the Property, and did not condition the payment upon the completion of repairs, or even the start of repairs. *See* Brownell Aff. at ¶¶ 5 & 9 (Debtor made claim under insurance policy and Insurance Company settled the claim by tendering payment). The Insurance Company made a lump sum payment on account of the claim rather than periodic

payments as one might expect if the payments were conditioned on Debtor's labor. In other words, when the Insurance Company issued the Check, the Debtor had already completed all steps necessary to earn the insurance proceeds – he paid his insurance premiums, timely reported the damage, and filed his insurance claim. Therefore, the Debtor was not required to perform any work on the Property, in the way of repairs or otherwise, in order to have a right to payment.

## IV.    CONCLUSION AND ORDER

The Check was issued to the Debtor after he filed a valid insurance claim for pre-petition damage to the Property, damage that occurred nearly two years before the petition date. All the actions required for the Debtor to earn the Check from the Insurance Company must have been met before the Insurance Company issued the Check, including paying the insurance premiums, suffering a covered loss to the Property, and making a proper claim. Indeed, the Insurance Company originally tendered payment in December, 2007 -- nearly one year before the petition date. There is nothing in the record that would permit the court to characterize the Check as a substitute for post-petition wages, and therefore the court will overrule the Debtor's Objection to the Trustee's Final Report.

NOW, THEREFORE, IT IS HEREBY ORDERED as follows:

1. The Debtor's Objection (DN 55) is OVERRULED; and

2. The Trustee's Final Report and Applications for Compensation (DN 50) are APPROVED.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon  David Keith Nieboer,  David Stempfly, Esq., Marcia R. Meoli Esq., and the United States Trustee.

**IT IS SO ORDERED.**                    Scott W. Dales
United States Bankruptcy Judge                **Dated: October 07, 2010**